## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mary L. Harnan,

                    Plaintiff,                    **MEMORANDUM OPINION**
                                                  **AND ORDER**
          v.                                      Civil No. 10-554 ADM/JJG

University of St. Thomas,

                    Defendant.

_____

Joni M. Thome, Esq., and Frances E. Baillon, Esq., Halunen & Associates, Minneapolis, MN, on
behalf of Plaintiff.

Martin D. Kappenman, Esq., and Phyllis Karasov, Esq., Moore Costello & Hart, PLLP, St. Paul,
MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On January 21, 2011, the undersigned United States District Judge heard oral argument

on Defendant University of St. Thomas' ("St. Thomas") Motion for Summary Judgment [Docket

No. 12].  Plaintiff Mary L. Harnan ("Harnan") asserts claims against St. Thomas for violations of

the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, the Minnesota Human Rights

Act ("MHRA"), Minn. Stat. §§ 363A.01-.41, and the Minnesota Whistleblower Act ("MWA"),

Minn. Stat. § 181.932.  For the reasons stated below, St. Thomas' Motion for Summary

Judgment is granted in part and denied in part.

## II.  BACKGROUND[1]

Harnan began working for St. Thomas in its Center for Catholic Studies in August 2007

as a program coordinator.  Notice of Removal [Docket No. 1], Ex. 1, Compl. ¶ 3.  Harnan's

_____

[1] On a motion for summary judgment, the Court views the evidence in the light most
favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

direct supervisor was Dr. Don Briel ("Briel").  See id. ¶ 4.  Briel's initial assessment of Harnan's work performance in June 2008 was generally positive with some specific areas of needed improvement identified.  Id. ¶ 5.

In the summer of 2008, Harnan had hysterectomy surgery and took leave from work to recuperate.  Id. ¶ 6.  Harnan attempted to keep her hysterectomy a secret from Briel, as she felt he would disapprove of the surgery because of the Catholic Church's stance on birth control.  Id.

Harnan claims that Briel's demeanor towards her became increasingly hostile following her surgery.  Id. ¶ 9.  Harnan claims that Briel was hostile towards many women in the workplace.  Id.  Other women had complained to Harnan that St. Thomas was an "old boy's club" and a "big boy's club."  Id. ¶ 33; St. Thomas Aff. [Docket No. 15], Ex. A, Harnan Dep. 214; St. Thomas Aff., Ex. C, Comedy Dep. 8.  Harnan cites as examples of Briel's generally hostile remarks the following: calling a nun "feisty," calling a female supervisor a "paper pusher," and berating a female employee to the point of tears.  Harnan Dep. 36, 205, 206.  Briel also speculated on whether a female professor was "done having babies," delegated responsibility for a seminar with the Women's Studies Department to a subordinate, and expressed anger that his marriage had to be annulled.  Id. at 37, 73, 205.  Harnan also claims that Briel had a positive working relationship with a female employee who would refer to him as "sir" and "dear."  Id. at 198.  Harnan admits that Briel was intimidating to both men and women.  Id. at 42.  Harnan also claims that Briel disliked "strong" women, but admits that he disliked anyone, male or female, that challenged him.  Id. at 75.  Harnan complained of Briel's hostile treatment to her mentor Barbara Clausen ("Clausen"), to Terri Sheehan ("Sheehan") a human resources partner, and to human resouces director Edna Comedy ("Comedy").  Compl. ¶¶ 10, 13,

25.

In January 2009, Briel began criticizing Harnan's work performance.  Id. ¶ 12.  Briel

issued a verbal warning in January 2009 and a written warning in May 2009.  Harnan Dep. Ex. 5,

Ex. 8.   In response to the verbal warning, Harnan admitted that she had made careless mistakes.

Id. Ex. 6.  As a result of the January 2009 warning, Harnan and Briel began having biweekly

meetings.  Thome Decl. [Docket No. 19] Ex. F.  Harnan also received additional training for St.

Thomas' budget process.  See Thome Decl. Ex. J.  By March 2009, Briel wrote an email to

Sheehan stating that Harnan's performance was much improved and regular meetings were no

longer necessary.  Thome Decl. Ex. Q.

In addition to the meetings and training, Harnan claims that Briel suggested that she work

"off the clock" to meet the demands of the job and improve her performance.  Compl. ¶¶ 11, 21.

Harnan refused and reported Briel's suggestion to Sheehan.  Id. ¶ 21. Sheehan did not

investigate.  St. Thomas Aff., Ex. D, Sheehan Dep. 92.  Briel then wrote an email to Sheehan

complaining about Harnan's performance and asking for advice.  Thome Decl. Ex. S.  Harnan

claims she also told Comedy about being asked to work off the clock, to which Comedy replied

that Briel may have forgotten she was an hourly employee.  Harnan Dep. 212.  In May 2009,

Harnan again complained about off the clock work, this time in an email to Clausen and

Comedy.  Thome Decl., Clausen Dep. 45-46.  No action was taken.  Id.  Harnan also made

reports about suspected violations of housing and food regulations and copyright laws.  Compl.

¶¶ 25, 27.  According to Harnan, the violations of housing and food regulations were widely

known.  Harnan Dep. 223.  The complaint about copyright violations was made in June 2009,

and the record does not indicate any reaction by St. Thomas.  See Harnan Dep. 108-09.

Also in June 2009, Briel sought permission to give Harnan a termination warning, but Comedy refused to support the warning saying that "[i]t [felt] pretextual." Thome Decl. Exs. Z, BB. On June 29, 2009, Harnan was given her annual performance review, which detailed several shortcomings. Thome Decl. Ex. EE. By July 17, 2009, Briel drafted a termination warning for Harnan. Thome Decl. Ex. KK. However, before the warning could be given to Harnan her doctor recommended that she take a leave of absence due to severe headaches. See Thome Decl. Ex. OO. Harnan provided certification from her doctor for her leave. Id. By letter dated August 4, 2009, St. Thomas informed Harnan that she was eligible for FMLA leave but would need to see another doctor to determine whether she would qualify for short-term disability leave. Thome Decl. Ex. UU.

On August 11, 2009, Harnan saw Dr. Khalafalla Bushara ("Dr. Bushara"), who concluded that Harnan "[was] not totally disabled and [was] able to perform the essential functions of her position," and was able to return to work immediately. Thome Decl. Ex. ZZ. On August 19, 2009, St. Thomas ordered Harnan to return to work. Compl. ¶ 25. Harnan had a previously scheduled doctor's appointment the day of her return. Id. ¶ 26. She notified Briel of the appointment, but did not receive permission to attend the appointment. Id. Harnan went to the appointment and was terminated later that week. Id. ¶¶ 28, 32. St. Thomas' proffered reason for the termination is insubordination. Id. ¶ 32.

On February 9, 2010, Harnan filed suit in Minnesota state court. On February 26, 2010, St. Thomas removed the case to federal court and now moves for summary judgment.

## III.  DISCUSSION

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  <u>Ludwig</u>, 54 F.3d at 470.  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Minnesota Human Rights Act Claims**

Counts I and IV of the Complaint allege violations of the MHRA.  The MHRA prohibits discrimination in employment based on sex, except when gender is a bona fide occupational qualification.  Minn. Stat. § 363A.08, subd. 2.  The MHRA also prohibits any reprisal by an employer against an employee who opposed sex discrimination.  Minn. Stat. § 363A.15.  Reprisal includes any form of intimidation, retaliation, or harassment.  <u>Id.</u>  Count IV of the Complaint alleges gender discrimination in violation of Minn. Stat. § 363A.08 and Count I alleges reprisal in violation of Minn. Stat. § 363A.15.  Each is considered in turn below.

**1.      Gender Discrimination**

To prevail on a claim of gender discrimination under the MHRA, a plaintiff must show

discrimination "because of . . . sex."   Minn. Stat. § 363A.08, subd. 2.  Courts analyze MHRA

sex discrimination claims through the staged analysis set forth in <u>McDonnell Douglas Corp. v.</u>

<u>Green</u>, 411 U.S. 792, 802 (1973) as used in claims under Title VII of the Civil Rights Act of

1964.  <u>Hervey v. County of Koochiching</u>, 527 F.3d 711, 719 (8th Cir. 2008).  To establish a

prima facie case of sex discrimination under the <u>McDonnell Douglas</u> test, a plaintiff must show

(1) she is a member of a protected class, (2) she met legitimate expectations of employment, (3)

she suffered an adverse employment action, and (4) similarly situated employees who were not

members of the protected class were treated differently.  <u>Devin v. Schwan's Home Serv., Inc.</u>,

491 F.3d 778, 789 (8th Cir. 2007).

Once a prima facie case is established, the burden of production shifts to the employer to

articulate a legitimate, non-discriminatory reason for its adverse employment action.  <u>Riley v.</u>

<u>Lance, Inc.</u>, 518 F.3d 996, 1000 (8th Cir. 2008).  If such reason is offered, then the presumption

of discrimination raised by the prima facie case is eliminated and the plaintiff must show by a

preponderance of the evidence that the employer's articulated reason was a pretext for

discrimination.  <u>Id.</u>  A genuine issue of material fact at any stage of the analysis is sufficient to

defeat summary judgment.  <u>Id.</u>

The <u>McDonnell Douglas</u> test, however, does not apply where a plaintiff can produce

direct evidence of discriminatory intent.  <u>Gallagher v. Magner</u>, 619 F.3d 823, 831 (8th Cir.

2010).  Direct evidence is evidence that shows a specific link between some discriminatory

animus and the decision at issue.  <u>Id.</u> (quotations omitted).  "Direct evidence includes 'evidence

of conduct or statements by persons involved in the decision-making process that may be viewed

as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an

inference that discriminatory attitude more likely than not was a motivating factor.  Schierhoff v.

GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006) (quoting

Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993)).

> a.      **Harnan has not produced direct evidence of discriminatory intent**

Harnan has not provided direct evidence of gender discrimination.  Harnan relies on

several comments she argues reveal a sexist attitude in opposing summary judgment.  Harnan

cites Briel's comments regarding childbearing, hostile remarks about certain women, and

coworkers' comments that St. Thomas was some form of "boy's club."  None of this evidence is

sufficient to defeat summary judgment.

Harnan has failed to present evidence of any discriminatory animus held by Briel or

anyone else at St. Thomas.  Even when viewed in the light most favorable to Harnan, Briel's

calling his supervisor a "paper pusher," his anger about the annulment of his marriage,

delegating work related to the Women's Studies Department, or that he called a nun "feisty" are

not evidence of animus towards women.  Nor is the fact that Briel had a collegial relationship

with a female colleague who called him "dear" and "sir" evidence of such animus.

Briel's inquiry whether a woman who had just had a child was planning on having more

children is also not evidence of animus.  No specific link between that comment and any

decisionmaking at St. Thomas has been shown.  Contrary to Harnan's characterization, the

evidence of record shows only that Briel speculated on a female professor's family plans but in

no way averred that it would factor into the decision-making process.  See Schierhoff, 444 F.3d

at 966 (stating that remarks unrelated to the decisional process are not direct evidence of

discrimination).

Finally, the comments of two other employees that St. Thomas is a "boy's club" is too vague to be evidence of either discriminatory animus or provide a specific link to Harnan. An "old boy's club" is a colloquialism and may refer to anything from needing a personal relationship with superiors to succeed, regardless of gender, to open discrimination against women. The evidence of record indicates that "old boy's club" was used to refer to the first situation, where personal relationships with decision makers weigh heavily, regardless of gender. Comedy Dep. 8. Further, a "big boy's club" is not a common colloquialism or idiom, and its precise meaning is never explained. Regardless of its meaning, if a "big boy's club" did exist, it is never explained how that club factored into the specific decision making process regarding Harnan's employment, and therefore summary judgment in favor of St. Thomas is appropriate. See Raby v. Westside Transit, No. Civ.A. 03-1000, 2006 WL 1877000, * 6 (E.D. La. June 16, 2006) (granting summary judgment in favor of employer under Title VII where employee had averred to existence of a "boys club" without any other evidence of discrimination).

**b.      No prima facie case of gender discrimination has been established**

Without direct evidence of discrimination, Harnan must establish a prima facie case of gender discrimination under the McDonnell Douglas test. Harnan, however, cannot establish a prima facie case because she has not adduced evidence that similarly situated male employees were treated differently than she was.

The theme of Harnan's argument is that Briel would berate female employees, including her, with hostile and intimidating remarks. The evidence of record, however, also indicates that Briel was equally hostile to both men and women that challenged him, and intimidated men and women alike. Harnan Dep. 72, 75. Without any evidence of disparate treatment by Briel, it

cannot be said that Harnan was treated differently "because of" her gender.  Thus, Harnan's claim under the MHRA based on gender discrimination fails as a matter of law, and St. Thomas is entitled to summary judgment on Count IV of the Complaint.

### 2.      Reprisal

Count I of the Complaint alleges a claim for reprisal under the MHRA.  To further prohibit gender discrimination, the MHRA creates a cause of action for intentional "reprisal" against a person that opposed an MHRA violation.  Minn. Stat. § 363A.15.  Reprisal includes "any form of intimidation, retaliation, or harassment," as well as "depart[ing] from any customary employment practice; transfer[ing] or assign[ing] the individual to a lesser position . . . ." Id.

Although the MHRA prohibits reprisal against an employee that opposes an MHRA violation, whether an actual or suspected violation of the MHRA is required for a reprisal claim is not expressly stated.  Minnesota law is unclear on this point.  In Bahr v. Capella University, 788 N.W.2d 76, 81 (Minn. 2010), the Minnesota Supreme Court refused to resolve the question of whether an actual violation was necessary or whether a good-faith, reasonable belief that a violation occurred was sufficient.  Like the Bahr Court, this Court declines to decide the issue as Harnan's claim fails even under the less stringent standard.

Harnan must produce evidence that she had a good-faith, reasonable belief that gender discrimination was occurring.  Her belief was not reasonable.  The mere fact that Briel was an intimidating and hostile supervisor is not sufficient to provide a reasonable basis to believe gender discrimination was occurring.  Gender discrimination requires discriminatory treatment based on gender. See Minn. Stat. § 363A.08, subd. 2.  Harnan had no reasonable basis to believe

disparate treatment was occurring given her own admission that Briel was intimidating to both men and women and equally berated men and women that challenged his authority.  See Harnan Dep. 42, 72.  Further, Harnan's subjective belief that Briel's attitude towards her got more hostile after her hysterectomy does not provide a reasonable basis to suspect Briel was engaging in gender discrimination; Harnan has no evidence beyond her own suspicion that Briel even knew of the surgery.  See Harnan Dep. 69-71.

Finally, vague references to St. Thomas being a "boy's club" without further elaboration do not support a reasonable belief that gender discrimination was occurring.  As such, St. Thomas is entitled to summary judgment on the MHRA reprisal claim.

**C.      FMLA**

Count III of the Complaint asserts a claim for violation of the FMLA.  A plaintiff may recover under the FMLA under two theories (1) retaliation or (2) interference.  To prevail on a claim of interference, Harnan must only show that she "was entitled to the benefit denied."  Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006).  To prevail on a retaliation claim, Harnan must show: (1) she exercised rights afforded by the FMLA, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two.  Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002).

**1.      Entitlement to FMLA benefits**

St. Thomas argues that Harnan cannot prevail on a claim either for retaliation or interference because she was not entitled to any benefit of the FMLA, as Dr. Bushara evaluated her condition and concluded that she could perform all essential duties of the job.  However, a genuine issue of material fact exists as to Harnan's eligibility for FMLA leave.

The FMLA entitles eligible employees to a leave "[b]ecause of a serious health condition that makes the employee unable to perform the function of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The parties do not dispute whether Harnan was an eligible employee, St. Thomas only disputes whether Harnan had a serious health condition as contemplated by the FMLA. St. Thomas argues that Dr. Bushara's conclusion is definitive of the issue and has been adopted by Harnan. Dr. Bushara's conclusion on its own, however, is not determinative of the issue.

The FMLA allows an employer to require certification from a healthcare provider. 29 U.S.C. § 2613(a). If an employer doubts the validity of the certification provided, the employer may require the employee to get a second opinion from a health care provider designated by the employer but not regularly employed by the employer. 29 U.S.C. § 2613(c). If, however, the first and second opinions differ, the employer may require a third certification from a health care provider agreed upon by both the employer and employee. 29 U.S.C. § 2613(d)(1). That third opinion is final and binding on both parties. 29 U.S.C. § 2613(d)(2).

Here, Harnan's doctor concluded that she needed leave and provided certification. St. Thomas responded by asking Harnan to see Dr. Bushara. Dr. Bushara concluded that Harnan did not need leave. These are conflicting opinions. The method of resolution is a third opinion. St. Thomas, however, chose not to request a third opinion. Because the third opinion is binding, the only logical reading of the statute is that the second opinion is not. Further, nothing about Harnan's specific medical condition, severe headaches, prevent it from being a serious health condition as a matter of law. See Branham v. Gannett Satellite Info. Network, Inc., 619 F.3d 563, 570-71 (6th Cir. 2010) (holding that a genuine issue of material fact existed as to whether

migraines, anxiety, depression, and insomnia constituted a serious health condition).  Therefore, given the conflicting medical opinion, Dr. Bushara's conclusion does not determine whether Harnan had a serious health condition and a genuine issue of material fact remains.

St. Thomas emphasizes that during her deposition Harnan did not dispute Dr. Bushara's conclusions regarding her ability to work.  However, a genuine issue of material fact remains.  Harnan is not required to diagnose herself, and while her opinion may differ from her own doctor's, who concluded that she was in need of leave from work, her opinion alone does not resolve the issue.  Furthermore, Dr. Bushara's opinion was given regarding eligibility for short-term disability.  Read in that context, Harnan's admission that she did not dispute Dr. Bushara's conclusion is not dispositive of her eligibility for FMLA leave.  Therefore, a genuine issue of material fact exists as to whether Harnan was entitled to the benefits of the FMLA.

### 2.      Interference claim

Based on Dr. Bushara's report, St. Thomas required Harnan to return to work.  If Harnan was entitled to FMLA leave, requiring her to return to work was a denial of a benefit to which she was entitled.  Therefore, because a genuine issue of material fact exists as to whether she was entitled to FMLA leave, summary judgment is not appropriate for Harnan's interference claim.

### 3.      Retaliation claim

With respect to retaliation, it is undisputed that Harnan suffered an adverse employment action–termination.  Further, as discussed above, a genuine issue of material fact exists as to whether Harnan was entitled to FMLA benefits, and therefore whether she was exercising FMLA rights.  The only issue remaining for consideration is whether a causal connection

between the two exists.

With respect to causation, sufficient evidence must be adduced to give rise to "an inference of retaliatory motive."  Kipp v. Missouri Highway and Transp. Comm'n, 208 F.3d 893, 895 (8th Cir. 2002) (quoting Summner v. U.S. Postal Serv., 899 F.2d 203, 208-09 (2d Cir. 1990)).  Normally, temporal proximity alone is insufficient to raise an inference of retaliatory motive; however, where the temporal proximity is "very close" it can raise such an inference. Hite v. Vermeer Mfg. Co., 446 F.3d 858, 866 (8th Cir. 2006) (quotations omitted).

In this case, Harnan was terminated within days of returning from FMLA leave; this is "very close" temporal proximity and is sufficient to establish a prima facie case.  Once a prima facie case of retaliation under the FMLA has been established, courts follow the McDonnell Douglas burden shifting framework, discussed above, to determine liability.  Phillips v. Mathews, 547 F.3d 905, 912 (8th Cir. 2008).  Under the McDonnell Douglas framework, the burden now shifts to St. Thomas to provide a legitimate reason.  The proffered legitimate reason is insubordination.

The burden now shifts back to Harnan to show that the legitimate reason offered by St. Thomas was pretextual.  Given that Harnan's previously identified problems were not related to attendance, her absence from work for a doctor's appointment was related to the condition for which she sought leave, and St. Thomas' internal emails questioning whether Harnan's work problems were "pretextual," a genuine issue of material fact remains as to whether the reason offered by St. Thomas was legitimate or a pretext.  As such, Harnan's FMLA claims survive summary judgment.

D.    **Whistleblower Claim**

Count III of the Complaint alleges a violation of Minnesota's whistleblower law. Minnesota's whistleblower law prohibits an employer from "discharg[ing], disciplin[ing], threaten[ing], otherwise discriminat[ing] against, or penaliz[ing]" an employee that reports a violation or suspected violation of any federal or state law. Minn. Stat. § 181.932, subd. 1. The elements of a prima facie case under § 181.932 are (1) statutorily-protected conduct, (2) adverse employment action, and (3) a causal connection. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005).

Statutorily-protected conduct in this context is making a "report" of a violation or suspected violation of the law. Minn. Stat. § 181.932, subd. 1. "Report" for the purposes of Minnesota whistleblower law means either "(1) to make or present an . . . official, formal or regular account of or (2) to relate or tell about." Skare v. Extendicare Health Servs., Inc., 515 F.3d 836, 840-41 (8th Cir. 2008) (quoting Gee v. Minnesota State Colls.& Univs., 700 N.W.2d 548, 555 (Minn. Ct. App. 2005)). Courts should use common sense in determining what qualifies as a report, but the employee must blow the whistle for the purpose of exposing an illegality. Id. A report is not a "[n]onspecific reference[] to past practices." Cokley v. City of Otsego, 623 N.W.2d 625, 631 (Minn. Ct. App. 2001). A report is also not a "mere mention" of already known information. Rothmeier v. Inv. Advisers, Inc., 556 N.W.2d 590, 593 (Minn. Ct. App. 1996). Furthermore, a report must be made for the protection of the public or some other person, not just the employee's own rights. Williams v. St. Paul Ramsey Med. Ctr., Inc., 551 N.W.2d 483, 485 n.1 (Minn. 1996).

Causation under § 181.932 requires a showing of retaliatory motive. Pope, 406 F.3d at

14

1010.  Close temporal proximity may support an inference of retaliatory motive, but usually

more than a temporal connection is necessary to create a genuine issue of material fact.  Freeman

v. Ace Tel. Ass'n, 404 F. Supp. 2d 1127, 1141 (D. Minn. 2005).

Once a prima facie case is established, whistleblower claims are analyzed under the

familiar McDonnell Douglas burden-shifting framework.  Grundtner v. Univ. of Minn., 730

N.W.2d 323, 329 (Minn. Ct. App. 2007).

Central to Harnan's argument that she has a claim under the Minnesota whistleblower

law is that she reported Briel's requests that she violate state and federal employment laws.

However, she cannot blow the whistle for her own personal benefit.  See  Williams 551 N.W.2d

at 485 n.1.  The only reporting she has identified that seeks to vindicate the rights of others is (1)

reporting that others that worked for Briel were working off the clock, (2) reporting suspected

violations of food and housing regulations, and (3) reporting suspected copyright violations.

None of these is sufficient to establish a prima facie case.

Harnan's complaints about others working off the clock are precisely the type of

nonspecific references held not to be actionable in Cokley.  Harnan only mentioned that Briel

"expected [his subordinates] to work off the clock."  Thome Decl. Ex. CC.  This remark lacks

any detail regarding the suspected violation of law, and therefore is only a nonspecific reference

to a past practice.  With respect to the complaints about food and housing violations, these are

not reports as a matter of law because, as Harnan admits, those violations were general

knowledge at St. Thomas.  With respect to the copyright complaints, Harnan complained in June

2009.  Her termination notice was not prepared until July 2009 and she was not terminated until

August 2009.  This temporal proximity without additional evidence supporting a finding of

retaliatory animus is insufficient to raise a genuine issue of material fact.  No facts have been

produced that link the copyright complaints and any action by St. Thomas.  As such, Harnan's

whistleblower claim fails as a matter of law and St. Thomas is entitled to summary judgment on

Count III.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  St. Thomas' Motion for Summary Judgment [Docket No. 12] is **GRANTED IN**

**PART AND DENIED IN PART**; and

2.  Counts I, III, and IV of the Complaint are **DISMISSED WITH PREJUDICE**.


BY THE COURT:



_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 8, 2011.